**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| GENERAL SECURITY NATIONAL INSURANCE COMPANY, | : : : | CIVIL ACTION No.: |
| Plaintiff, | : : | |
| v. | : : | |
| CAPITOL SPECIALTY INSURANCE CORPORATION and LYNCH INVESTMENT GROUP D/B/A ENVIRONMENTAL & TECHNICAL SERVICES LLC, | : : : : | |
| Defendants. | : : | |

---

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, General Security National Insurance Company ("General Security"), by and through its counsel, Kennedys CMK, LLP, brings this Complaint for Declaratory Judgment and states as follows:

### NATURE OF THE ACTION

1.      This declaratory judgment action arises from a lawsuit styled <u>Scott and Ashley Davidson, as Administrators Ad Prosequendum and General Administrators of the Estate of Emma Davidson, Deceased, and Individually v. Sun Communities, Inc., Sun RV Resorts, Sun Outdoors Cape May, Sun Lake Laurie RV LLC, Kampgrounds of America Inc., Cape May KOA, Environmental & Technical Services LLC, Lynch Investment Group, John Doe (A through Z) and John Doe Corporation (A through Z)</u>, and pending in the Superior Court of New Jersey, Cumberland County, Docket No. CUM-L-000462-21 ("the Underlying Action"), in which decedent's estate alleges personal injuries and wrongful death in connection with an accident that occurred on April 3, 2021 at a campground located at 669 Route 9, Cape May, New Jersey (the

"Camp"). The Amended Complaint in the Underlying Action alleges that the decedent was caused to fall into a septic tank at the Camp due to an unsecured, broken and/or defective cover. A copy of the Amended Complaint in the Underlying Action is annexed hereto as **Exhibit A**.

2.     Defendant, Lynch Investment Group d/b/a Environmental & Technical Services LLC (the "Insured") seeks insurance coverage and a defense and indemnity with respect to the claims asserted against "Environmental & Technical Services, LLC" ("ETS") and "Lynch Investment Group" ("Lynch") in the Underlying Action.

3.     Defendant, Capitol Specialty Insurance Corporation ("Capitol Specialty") issued a professional liability policy to the Insured, in effect on April 3, 2021, under which Capitol Specialty has acknowledged coverage for the Underlying Action, but has recently disclaimed any duty to defend or indemnify the Insured in connection with the Underlying Action.

4.     General Security issued a premises liability policy to the Insured under which it is providing the Insured with a defense in the Underlying Action pursuant to a full and complete reservation of rights.

5.     General Security, by the within complaint, seeks judgment declaring that General Security; (i) owes no further duty or obligation to defend or indemnify the Insured in the Underlying Action because, as relevant here, the Premises Limitation As Described In Declarations endorsement, the Operations/Coverage Exclusion • Part II endorsement, the Professional Activities Exclusion, and the Governmental/Legal/War Exclusion in the General Security policy applies to preclude coverage; and (ii) there is no coverage under the General Security policy.  The Insured's liability in the Underlying Action, if any, should be covered, if at all, under the Capitol Specialty professional liability policy.

6.      General Security further seeks judgment declaring that Capitol Specialty is obligated to share in the defense of the Insured in the Underlying Action and must reimburse General Security for Capitol Specialty's pro-rata share of the defense costs that have been incurred to date.

## THE PARTIES

7.      Plaintiff General Security is a corporation organized under the laws of the State of New York with its principal place of business in New York, New York.

8.      Defendant Capitol Specialty is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business in Madison, Wisconsin.

9.      Defendant Lynch is a corporation organized under the laws of the State of New Jersey with its principal place of business located at 822 Washington Avenue, Woodbine, New Jersey.

10.      Upon information and belief, ETS is a limited liability company organized under the laws of the State of New Jersey, whose members are citizens of the State of New Jersey.

11.      Upon information and belief, ETS is a New Jersey State Department of Environmental Protection licensed operator.

12.      Upon information and belief, Lynch owns the building located at 822 Washington Avenue, Woodbine, New Jersey.

13.      Upon further information and belief, ETS is the sole tenant of the building located at 822 Washington Avenue, Woodbine, New Jersey.

## JURISDICTION AND VENUE

14.      This is an action wherein part of the relief sought is for declaratory judgment pursuant to 28 U.S.C. § 2201.

15.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (a), as this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and cost.

16.     Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the subject claim occurred within this judicial district.

**FACTUAL BACKGROUND**

A.     **The General Security Policy**

17.     General Security provides Business Liability coverage to the Insured, under policy number 3710-500000216 2021 0, effective January 23, 2021 through January 23, 2022 (the "General Security Policy").

18.     The General Security Policy includes Part IIA, Main Liability Coverages, which provides in part:

APPLICATION OF THIS INSURANCE (PART II)

This insurance applies to liability arising out of your premises and business/operations, designated in the Declarations or elsewhere in this policy, to the extent covered in this policy, …

19.     The Declarations to the General Security Policy identifies the Business/Operation as "Office" and specifically lists "822 Washington Avenue, including 825 Jackson Avenue, Woodbine, New Jersey" (the "Premises") in the Schedule of Premises.

20.     The General Security Policy also includes the Premises Limitation As Described In Declarations endorsement, which states:

PREMISES LIMITATION AS DESCRIBED IN DECLARATIONS ● PART II

*This endorsement limits insurance to the premises described in the Declarations and business/operations associated with such premises.*

The provisions of this endorsement apply only when the endorsement number is listed in the Declarations. Except as provided below, all other provisions in this policy are unchanged.

COVERAGE MODIFICATION

PART II applies solely at the premises described in the Declarations of this policy including necessary related operations away from these premises.

21.     The Premises Limitation As Described In Declarations endorsement limits liability insurance under the General Security Policy to the Premises and business/operations associated with such Premises, which does not include the claims asserted in the Underlying Action.

22.     The General Security Policy also includes the Operations/Coverage Exclusion ● Part II endorsement, which provides:

OPERATIONS/COVERAGE EXCLUSION ● PART II

This endorsement excludes the operations/coverages as described. The required information may be shown below or elsewhere in this policy.

*       *       *

Operations/Coverage Excluded ● List location if not applicable to all locations.

1. –  If checked, Part II does not include any liability included within the products/completed operations hazard. Location No:
2. –  If checked, The Personal Injury/Advertising Injury Supplemental Coverage in Part II does not apply.
3. X Other:   ALL   ENGINEERING   OPERATIONS   AND PROFESSIONAL LIABILITY

COVERAGE MODIFICATION

PART II does not apply to the operations or coverages described in the Schedule, including any premises used in connection with the described operations.

23.     Pursuant to the Operations/Coverage Exclusion ● Part II endorsement, the General Security Policy does not provide coverage for the Insured's engineering operations or professional liability.

24.     The General Security Policy also includes the Professional Activities Exclusion, which provides:

> 11. PROFESSIONAL ACTIVITIES EXCLUSION
> We do not insure bodily injury or property damage arising out of the rendering or failure to render any sort of professional advice, product or service whether such are those of any insured or insured's indemnitee or any employees of an insured or employees of an insured's indemnitee.

25.     When the Professional Activities Exclusion applies, as here, the General Security Policy will not provide insurance for any sort of costs, damages, expenses, or liability, directly or indirectly, wholly or partially, aggravated by, caused by, or resulting from such professional activities, even if an occurrence otherwise covered contributes to such concurrently or in any sequence.

26.     In addition, the General Security Policy contains Common Exclusions that include the Governmental/Legal/War Exclusion, which bars coverage for, in part, statutory fines or liability and exemplary or punitive damages.

27.     Further, under Coverage F – Medical Payments To Others, General Security will only pay the reasonable necessary medical expenses, incurred by others, arising out of an accident which are both incurred and reported within three years from the date of such accident, and must occur (a) on "your premises"; (b) away from "your premises", but if so, then only if the accident either (i) arises out of a condition at "your premises"; or (ii) arises out of the business/operations insured by the General Security Policy.

**B.**     <u>**The Capitol Specialty Policy**</u>

28.     Capitol Specialty provides Environmental Consultants Professional Liability Coverage to the Insured, under policy number EV20160898-06, in effect for the policy period February 25, 2021 to February 25, 2022, with limits of $2 million each claim, subject to a $5,000 deductible each claim (the "Capitol Specialty Policy").

29.     Under the General Terms and Conditions of the Capitol Specialty Policy, Capitol Specialty has the right and duty to defend the Insured against any claim or suit to which the insurance applies.

30.     The Environmental Consultants Professional Liability Coverage Insuring Agreement states, in part, that Capitol Specialty shall pay on behalf of the Insured, the covered damages that the Insured becomes legally obligated to pay because of a claim for the negligent acts, error or omissions of the Insured in the performance of Covered Professional Activities.

31.     The Covered Professional Activities – Specifically Defined endorsement provides:

> This endorsement modifies insurance provided under the Environmental Policy for the following:
>
> Environmental Consultants Professional Liability Coverage Section
>
> It is hereby understood and agreed that the following changes are incorporated in the Coverage Form(s)/Coverage Section(s) listed above.
>
> A. The definition of Covered Professional Activities set forth in Section II. Definitions, Subsection E., is deleted in its entirety and replaced with the following:
>
> > E. Covered Professional Activities means those professional services performed by you and your business as described in the Schedule below, and which are rendered by you or on your behalf for others for a fee.

B. The Specified Professional Services Exclusion set forth in Section III. Of the Coverage Section specified above does not apply to the professional service(s) specified in the Schedule below.

| Professional Services Schedule |
| --- |
| Wastewater Management & Treatment Services; Environmental Feasibility Studies; Phase 1 Environmental Site Assessments; Exhaust/Stack Air Testing |

If this endorsement is issued after the Policy has been issued, it is deemed to have been added to the list of forms and endorsements on the Declarations.

All other terms and conditions of this Policy remain unchanged.

**C.**    **The Underlying Action**

32.    The Amended Complaint in the Underlying Action alleges the underlying defendants, including ETS and Lynch, owned, maintained, managed and/or controlled the Camp and had a duty to maintain the Camp in a reasonably safe condition. See Ex. A, at ¶¶ 15, 17.

33.    It is alleged that on April 3, 2021, there was a septic tank at the Camp with a lid or cover that was broken, cracked, damaged, unsecured, improperly secured, open and/or missing a cover, rendering the premises defective, dangerous, hazardous and in disrepair. Id. at ¶ 18.

34.    It is alleged that this condition existed for a long time prior to April 3, 2021, and that the defendants, including ETS and Lynch, had notice of the defective and dangerous condition. Id. at ¶¶ 19-20.

35.    It is further alleged that on April 3, 2021, the decedent slipped, tripped, twisted and fell into a septic tank at the Camp, due in part to the fact that the cover that is alleged to have been defective, dangerous, hazardous, irregular, and in disrepair. **Id.** at ¶ 21.

36.    The Amended Complaint further alleges that defendants, including ETS and Lynch, violated state regulations by failing to secure and/or lock the cover of the septic tank, despite knowing that other patrons at the Premises almost fell into the tank on prior occasions. Id. at ¶ 77.

37.     It is further alleged that the defendants, including ETS and Lynch, were cited for multiple violations by the New Jersey Department of Environmental Protection for unsecured and improperly maintained septic tank lids. Id. at ¶ 78.

38.     The Amended Complaint alleges causes of action against each of the defendants, including ETS and Lynch, for Wrongful Death; Survival Action/Negligence; Negligent Infliction Of Emotional Distress; Punitive Damages; and Intentional Infliction Of Emotional Distress.

39.     Prior to April 3, 2021, ETS issued to Cape May KOA a proposal for professional and consulting services, dated March 11, 2017, which stated, in part, that ETS's Scope of Work included checking the operation of all on-site Septic System Pump Stations at the Camp (the "Proposal").

**D.     The Insurers Coverage Positions**

40.     By correspondence dated September 7, 2021, Capitol Specialty agreed to defend the Insured in the Underlying Action pursuant to a reservation of rights.

41.     By correspondence dated September 9, 2021, General Security issued a Partial Denial and Reservation of Rights to the Insured and agreed to share in the defense of the potentially covered claims in the Underlying Action with Capitol Specialty.

42.     General Security subsequently advised the Insured that, subject to its Partial Denial and Reservation of Rights, General Security would agree to defend the Insured in connection with all claims asserted in the Underlying Action.

43.     Thereafter, by correspondence dated November 17, 2021, Capitol Specialty denied any obligation to defend or indemnify the Insured in the Underlying Action.

44.     Upon information and belief, Capitol Specialty has withdrawn all participation in the Insured's defense.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment – Capitol Specialty Must Defend)

45.     General Security hereby incorporates by reference paragraphs 1 through 44 as if fully set forth herein at length.

46.     The Proposal provided, in part, that ETS would check the operation of all on-site Septic System Pump Stations at the Camp.

47.     It is alleged that there was a septic tank at the Camp with a lid or cover that was broken, cracked, damaged, unsecured, improperly secured, open and/or missing a cover, rendering the premises defective, dangerous, hazardous and in disrepair. Id. at ¶ 18.

48.     It is alleged that ETS violated state regulations by failing to secure and/or lock the cover of the septic tank. Id. at ¶ 77.

49.     It is further alleged that ETS was cited for multiple violations by the New Jersey Department of Environmental Protection for unsecured and improperly maintained septic tank lids. Id. at ¶ 78.

50.     Capitol Specialty initially acknowledged that the Underlying Action potentially implicated coverage under the Environmental Consultants Professional Liability Coverage part of the Capitol Specialty Policy and agreed to defend the Insured subject to a reservation of rights.

51.     Thereafter, General Security issued a Partial Denial and Reservation of Rights to the Insured and agreed to share in the defense of the potentially covered claims in the Underlying Action with Capitol Specialty.

52.     General Security subsequently advised the Insured that, subject to its Partial Denial and Reservation of Rights, General Security would agree to defend the Insured in connection with all claims asserted in the Underlying Action, both covered and uncovered.

53.     Then, because General Security agreed to participate in the Insured's defense, Capitol Specialty denied any obligation to defend or indemnify the Insured in the Underlying Action pursuant to the Other Insurance condition in the Capitol Specialty Policy, and disclaimed coverage for the Underlying Action based on the exclusions for Expected or Intended Acts, Dishonest Acts and Punitive or Exemplary Damages.

54.     Based on the allegations in the Underlying Action, Capitol Specialty is, at the very least, required to share the costs of the Insured's defense with General Security.

55.     There is an actual dispute between General Security and Capitol Specialty regarding whether Capitol Specialty is required to defend and indemnify Lynch in the Underlying Action.

56.     This matter presents a real and actual controversy that is ripe for judicial determination. A declaratory judgment is an appropriate remedy because the determination sought will resolve the controversy between the parties.

57.     General Security seeks a declaratory judgment that Capitol Specialty is obligated to defend Lynch in the Underlying Action.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Contribution )

58.     General Security hereby incorporates by reference paragraphs 1 through 57 as if fully set forth herein at length.

59.     Capitol Specialty initially acknowledged that the Underlying Action potentially implicated coverage under the Environmental Consultants Professional Liability Coverage part of the Capitol Specialty Policy and agreed to defend the Insured subject to a reservation of rights.

60.     After General Security agreed to participate in the Insured's defense, Capitol Specialty denied any obligation to defend or indemnify the Insured in the Underlying Action.

61.     Upon information and belief, Capitol Specialty has withdrawn from the defense of the Underlying Action.

62.     Based on the allegations in the Underlying Action, Capitol Specialty is, at the very least, required to share the costs of the Insured's defense with General Security.

63.     General Security continues to pay for the Insured's defense in the Underlying Action without any participation or contribution from Capitol Specialty.

64.     There is an actual dispute between General Security and Capitol Specialty regarding whether Capitol Specialty is required to defend and indemnify the Insured in the Underlying Action.

65.     This matter presents a real and actual controversy that is ripe for judicial determination. A declaratory judgment is an appropriate remedy because the determination sought will resolve the controversy between the parties.

66.     General Security seeks a declaratory judgment that Capitol Specialty is obligated contribute its pro-rata share of the costs and expenses incurred in defending the Insured in the Underlying Action.

### AS AND FOR A THIRD CAUSE OF ACTION
#### (Equitable Subrogation - Reimbursement )

67.     General Security hereby incorporates by reference paragraphs 1 through 66 as if fully set forth herein at length.

68.     Based on the allegations in the Underlying Action, General Security agreed to defend the Insured subject to a reservation of rights.

69.     General Security is defending the Insured in the Underlying Action without any participation or contribution from Capitol Specialty.

70.     General Security has incurred, and continues to incur, costs and expenses in defending the Insured in the Underlying Action.

71.     Due to Capitol Specialty's unwillingness to pay its pro-rata share of the Insured's defense costs and expenses, despite its clear obligation to do so, General Security has suffered and continues to suffer damages in that General Security is paying for more than its share of defense costs.

72.     Justice requires that Capitol Specialty must be made to share in the defense of the Insured in the Underlying Action because to allow Capitol Specialty to continue to avoid General Security's claim for subrogation would be to allow Capitol Specialty to take advantage of its own wrong.

73.     There is an actual dispute between General Security and Capitol Specialty regarding whether Capitol Specialty is required to defend and indemnify the Insured in the Underlying Action.

74.     This matter presents a real and actual controversy that is ripe for judicial determination. A declaratory judgment is an appropriate remedy because the determination sought will resolve the controversy between the parties.

75.     General Security seeks a declaratory judgment that Capitol Specialty is obligated to reimburse General Security for its pro-rata share of the costs General Security has incurred to date in defending Lynch in the Underlying Action.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Declaratory Judgment – Premises Limitation Endorsement)

76.     General Security hereby incorporates by reference paragraphs 1 through 75 as if fully set forth herein at length.

77.    The incident that is the subject of the Underlying Action took place at the Camp, located at 669 Route 9, Cape May, New Jersey. See **Ex. A** at ¶¶ 15, 21.

78.    Capitol Specialty has acknowledged that the Underlying Action potentially implicates coverage under the Environmental Consultants Professional Liability Coverage part of the Capitol Specialty Policy, insofar as the claims are for ETS's alleged negligent acts, errors or omissions in the performance of wastewater management and treatment services at and for the Camp.

79.    Subject to the terms, conditions, exclusions and endorsements therein, the General Security Policy provides liability insurance to the Insured only for the Premises, which is located at 822 Washington Avenue, including 825 Jackson Avenue, in Woodbine, New Jersey.

80.    The General Security Policy specifically includes the "Premises Limitation As Described In Declarations" endorsement, which states that liability insurance applies solely to the Premises, including necessary related operations away from these Premises.

81.    The "Business/Operations" listed in the Declarations for the General Security Policy is "Office".

82.    Pursuant to the "Covered Professional Activities – Specifically Defined" endorsement in the Capitol Specialty Policy, "Covered Professional Activities" includes ETS's wastewater management and treatment services, environmental feasibility studies, Phase 1 environmental site assessments, and exhaust/stack air testing.

83.    There is an actual dispute between General Security, Capitol Specialty, and the Insured regarding whether the General Security Policy provides coverage for the claims asserted against Lynch in the Underlying Action.

84.     This matter presents a real and actual controversy that is ripe for judicial determination. A declaratory judgment is an appropriate remedy because the determination sought will resolve the controversy between the parties.

85.     General Security seeks a declaratory judgment that, pursuant to the "Premises Limitation As Described In Declarations" endorsement, General Security has no obligation to defend or indemnify the Insured for the Underlying Action.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Declaratory Judgment – the Professional Activities Exclusion)**

86.     General Security incorporates herein by reference the allegations set forth in paragraphs 1 through 85 as if they were fully set forth at length herein.

87.     The General Security Policy includes the Professional Activities Exclusion, which precludes coverage under the General Security Policy for bodily injury arising out of the rendering or failure to render any sort of professional advice, product or service.

88.     The Environmental Consultants Professional Liability Coverage part of the Capitol Specialty Policy provides coverage for damages that the Insured becomes legally obligated to pay because of a claim for ETS's negligent acts, errors or omissions in the performance of Covered Professional Activities, which includes wastewater management and treatment services.

89.     The ETS Proposal's Scope of Work included checking the operation of all on-site Septic System Pump Stations at the Camp.

90.     The claims asserted against the Insured in the Amended Complaint arise out of ETS's rendering or failure to render any sort of professional advice, product or service as set forth in the Proposal.

91.     General Security does not owe a defense or indemnity to the Insured in the Underlying Action pursuant to the Professional Activities Exclusion.

92.     There is an actual dispute between General Security, Capitol Specialty, and the Insured regarding whether the General Security Policy provides coverage for the claims asserted against Lynch in the Underlying Action.

93.     This matter presents a real and actual controversy that is ripe for judicial determination. A declaratory judgment is an appropriate remedy because the determination sought will resolve the controversy between the parties.

94.     General Security seeks a declaratory judgment that General Security has no obligation to defend or indemnify the Insured in the Underlying Action pursuant to the Professional Activities Exclusion.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Declaratory Judgment – the Operations/Coverage Exclusion – Part II Endorsement)

95.     General Security incorporates herein by reference the allegations set forth in paragraphs 1 through 94 as if they were fully set forth at length herein.

96.     The Operations/Coverage Exclusion – Part II Endorsement modifies the General Security Policy insofar as liability coverage does not apply to the operations or coverage described in the Schedule, which lists all engineering operations and professional liability, including any premises used in connection with the described operations.

97.     The Environmental Consultants Professional Liability Coverage part of the Capitol Specialty Policy provides coverage for damages that the Insured becomes legally obligated to pay because of a claim for ETS's negligent acts, errors or omissions in the performance of Covered Professional Activities.

98.     Upon information and belief, the claims asserted against the Insured in the Underlying Action are for ETS's engineering operations and professional liability.

99.     General Security does not owe a defense or indemnity to the Insured in the Underlying Action pursuant to the Operations/Coverage Exclusion – Part II Endorsement.

100.     There is an actual dispute between General Security, Capitol Specialty, and the Insured regarding whether the General Security Policy provides coverage for the claims asserted against the Insured in the Underlying Action.

101.     This matter presents a real and actual controversy that is ripe for judicial determination. A declaratory judgment is an appropriate remedy because the determination sought will resolve the controversy between the parties.

102.     General Security seeks a declaratory judgment that General Security has no obligation to defend or indemnify the Insured in the Underlying Action pursuant to the Operations/Coverage Exclusion – Part II Endorsement.

### AS AND FOR A SEVENTH CAUSE OF ACTION
**(Declaratory Judgment – Counts Seven to Twelve in the Underlying Action)**

103.     General Security incorporates herein by reference the allegations set forth in paragraphs 1 through 102 as if they were fully set forth at length herein.

104.     The Complaint in the Underlying Action alleges that the Insured engaged in intentional and willful conduct and seeks to recover for punitive damages and intentional infliction of emotional distress (Counts Seven through Twelve).

105.     The claims for punitive damages and intentional infliction of emotional distress are not claims for "bodily injury" caused by a covered "occurrence" as those terms are defined in the General Security Policy.

106.   General Security has no obligation to defend or indemnify the Insured in connection with the claims for punitive damages and intentional infliction of emotional distress because those claims are not covered under the General Security Policy.

107.   There is an actual dispute between General Security and the Insured regarding whether the General Security Policy provides coverage to the Insured for the claims asserted against the Insured in the Underlying Action.

108.   This matter presents a real and actual controversy that is ripe for judicial determination. A declaratory judgment is an appropriate remedy because the determination sought will resolve the controversy between the parties.

109.   General Security seeks a declaratory judgment that General Security has no obligation to defend or indemnify the Insured with respect to the claims for punitive damages and intentional infliction of emotional distress (Counts Seven through Twelve) in the Underlying Action.

## AS AND FOR A EIGHTH CAUSE OF ACTION
### (Declaratory Judgment – Coverage F)

110.   General Security incorporates herein by reference the allegations set forth in paragraphs 1 through 109 as if they were fully set forth at length herein.

111.   Pursuant to Coverage F – Medical Payments To Others, General Security will only pay the reasonable necessary medical expenses, incurred by others, arising out of an accident which are both incurred and reported within three years from the date of such accident, and must occur (a) on "your premises"; (b) away from "your premises", but if so, then only if the accident either (i) arises out of a condition at "your premises"; or (ii) arises out of the business/operations insured by the General Security Policy.

112.     The incident that is the subject of the Underlying Action took place at the Camp, not at the Premises. See **Ex. A** at ¶¶ 15, 21.

113.     Coverage F is not implicated by the claims in the Underlying Action because the alleged accident did not occur on the Premises and, even though the accident occurred away from the Premises, it did not arise out of a condition at the Premises.

114.     Further, although the incident took place away from the Premises, it did not arise out of the business/operations insured by the General Security Policy.

115.     General Security does not owe coverage to the Insured pursuant to Coverage F of the General Security Policy.

116.     There is an actual dispute between General Security and the Insured regarding whether the General Security Policy provides coverage to the Insured for the claims asserted against the Insured in the Underlying Action.

117.     This matter presents a real and actual controversy that is ripe for judicial determination. A declaratory judgment is an appropriate remedy because the determination sought will resolve the controversy between the parties.

118.     General Security seeks a declaratory judgment that General Security has no obligation to defend or indemnify the Insured in connection with any claim for damages related to the reasonable and necessary medical expenses incurred by the plaintiffs in the Underlying Action.

### AS AND FOR A NINTH CAUSE OF ACTION
### (Declaratory Judgment – the Contractual Liability Exclusion)

119.     General Security incorporates herein by reference the allegations set forth in paragraphs 1 through 118 as if they were fully set forth at length herein.

120.    The General Security Policy contains the Contractual Liability Exclusion, which specifically excludes coverage for damages because of the assumption of liability for damages for bodily injury in an implied, oral or written agreement or contract.

121.    To the extent the liability of the Insured, if any, is because of a contractual undertaking, coverage is excluded by the Contractual Liability Exclusion.

122.    There is an actual dispute between General Security and the Insured regarding whether the General Security Policy provides coverage to the Insured for the claims asserted against the Insured in the Underlying Action.

123.    This matter presents a real and actual controversy that is ripe for judicial determination. A declaratory judgment is an appropriate remedy because the determination sought will resolve the controversy between the parties.

124.    General Security seeks a declaratory judgment that General Security has no obligation to defend or indemnify the Insured in the Underlying Action in connection with any claim for damages related to the Insured's contractual obligations.

## AS AND FOR AN TENTH CAUSE OF ACTION
### (Declaratory Judgment – the Governmental/Legal/War Exclusion)

125.    General Security incorporates herein by reference the allegations set forth in paragraphs 1 through 124 as if they were fully set forth at length herein.

126.    The General Security Policy also contains the Common Exclusions, including the Governmental/Legal/War Exclusion, which excludes coverage for the knowing violation of penal law or ordinance committed by, or with the consent of, any insured, as well as statutory fines or liability, and exemplary or punitive damages.

127.    The Underlying Action seeks to recover punitive damages from the Insured.

128.     Pursuant to the Governmental/Legal/War Exclusion, General Security does not owe a defense or indemnity to the Insured with respect to the claims for punitive damages.

129.     In addition, punitive damages are generally not insurable as against New Jersey public policy.

130.     There is an actual dispute between General Security and the Insured regarding whether the General Security Policy provides coverage to the Insured for the punitive damages claims asserted against the Insured in the Underlying Action.

131.     This matter presents a real and actual controversy that is ripe for judicial determination. A declaratory judgment is an appropriate remedy because the determination sought will resolve the controversy between the parties.

132.     General Security seeks a declaratory judgment that General Security has no obligation to defend or indemnify the Insured in the Underlying Action for any punitive damages pursuant to the Governmental/Legal/War Exclusion.

## PRAYER FOR RELIEF

WHEREFORE, General Security prays this Court for the following relief:

a.     A declaratory judgment that Capitol Specialty is required to defend the Insured in the Underlying Action;

b.     A declaratory judgment that Capitol Specialty is required to participate in, and contribute to paying its pro-rata share of the costs to defend the Insured in the Underlying Action

c.     A declaratory judgment that Capitol Specialty is required to reimburse General Security for Capitol Specialty's pro-rata share of the costs incurred by General Security in defending the Insured in the Underlying Action to date;

d.     A declaratory judgment that General Security is not required to defend or indemnify the Insured in the Underlying Action because the claims do not implicate coverage under the General Security Policy;

e.      A declaratory judgment that the Professional Activities Exclusion precludes coverage under the General Security Policy for the claims in the Underlying Action, which are for bodily injury arising out of the rendering or failure to render any sort of professional advice, product or service;

f.      A declaratory judgment that the Operations/Coverage Exclusion – Part II Endorsement to the General Security Policy bars coverage for the claims in the Underlying Action that arise out of the Insured's engineering operations and professional liability;

g.      A declaratory judgment that General Security is not required to defend or indemnify the Insured with respect to Counts Seven through Twelve in the Underlying Action because those claims do not allege any "bodily injury" caused by an "occurrence" under the General Security Policy;

h.      A declaratory judgment that the claims in the Underlying Action do not implicate Coverage F under the General Security Policy;

i.      A declaratory judgment that the Contractual Liability Exclusion applies to bar coverage for claims asserted against the Insured in the Underlying Action based on its contractual obligations;

j.      A declaratory judgment that the Governmental/Legal/War Common Exclusion applies to preclude coverage for all claims for punitive damages in the Underlying Action;

k.      An award of General Security's costs and expenses incurred in connection with this action; and

l.      Such other further relief as this Court deems just and proper.


Respectfully Submitted,


BY:      /s/ Christopher R. Carroll
Christopher R. Carroll, Esq.
Tara E. McCormack, Esq.
KENNEDYS CMK, LLP
120 Mountain View Boulevard
P.O. Box 650
Basking Ridge, New Jersey 07920
Phone: (908) 848-6300
Fax: (908) 848-6310
christopher.carroll@kennedyslaw.com
tara.mccormack@kennedyslaw.com

Attorneys for Plaintiff
General Security National Insurance
Company

Dated: February 9, 2022