## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| GENERAL SECURITY NATIONAL INSURANCE COMPANY, | CIVIL ACTION NO.: 1:22-cv-00692 (JHR) (AMD) |
| Plaintiff, | |
| vs. | |
| CAPITOL SPECIALTY INSURANCE CORPORATION and LYNCH INVESTMENT GROUP D/B/A ENVIRONMENTAL & TECHNICAL SERVICES LLC, | |
| Defendants. | |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF GENERAL SECURITY NATIONAL INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

**Of Counsel and on the Brief:**
Christopher R. Carroll, Esq.
Tara E. McCormack, Esq.
Joanna L. Young, Esq.

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ...............................................................................1

STATEMENTOF FACTS ....................................................................................3

    A. The Underlying Action ..........................................................................3

    B. The Insurance Policies .........................................................................6

        i.  The General Security Policy ........................................................6

        ii.  The CSIC Policy .........................................................................6

    C. Claim Correspondence ........................................................................12

LEGAL STANDARD ........................................................................................13

LEGAL ARGUMENT ........................................................................................15

    A. This Action Has A Real and Significant Relationship
       With New Jersey Such That New Jersey Law Applies ..........................15

    B. CSIC Has A Duty to Defend Under its Environmental
       Professional Liability Policy ..................................................................16

    C. The "Other Insurance" Clauses Do Not Eliminate
       CSIC's Duty to Defend ........................................................................21

CONCLUSION ................................................................................................23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Abouzaid v. Mansard Gardens Assoc., LLC,
   206 N.J. 67, 23 A.2d 338 (2011) .......................................................................17

Aetna Cas. & Sur. Co. v. Ply Gem Indus., Inc.,
   343 N.J. Super. 430, 778 A.2d 1132 (App. Div. 2001).....................................17

American Nurses Ass'n v. Passaic Gen. Hosp.,
   192 N.J.Super. 486, 471 A.2d 66 (App. Div. 1984).........................................21

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242, 106 S.Ct. 2505 (1986) ...............................................................14

Berg Chilling Systems, Inc. v. Hull Corp.,
   435 F.3d 455 (3d Cir. 2006) .............................................................................15

Celotex Corp. v. Catrett,
   477 U.S. 317, 106 S.Ct. 2548 (1986) ...............................................................14

Central Nat'l Ins. Co. v. Utica Nat'l Ins. Group,
   223 N.J.Super. 467, 557 A.2d 693 (App. Div. 1989).......................................16

CNA Ins. Co. v. Selective Ins. Co.,
   354 N.J.Super. 369, 807 A.2d 247 (App. Div. 2002).......................................22

Commercial Union Ins. Co. v. Bituminous Cas. Corp.,
   CIV. No. 87-325, 1989 WL 5818 (D.N.J. Jan. 25, 1989) ................................22

Danek v. Hommer,
   28 N.J.Super. 68, 100 A.2d 198 (App. Div. 1953)...........................................19

Doto v. Russo,
   140 N.J. 544, 659 A.2d 1371 (1995) ................................................................16

General Accident Ins. Co. v. New York Marine & Gen. Ins. Co. t/a Mutual Marine
   Office, Inc.,
   320 N.J.Super. 546, 727 A.2d 1050 (App. Div. 1999).....................................22

Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.,
   134 N.J. 96, 629 A.2d 885 (1993) ........................................................................15

Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co.,
   98 N.J. 18, 483 A.2d 402 (1984) .........................................................................16

Kaucher v. Cnty. of Bucks,
   455 F.3d 418 (3d Cir. 2006) .............................................................................14

Klaxon Co. v. Stentor Electric,
   313 U.S. 487, 61 S.Ct. 1020 (1941) ...................................................................15

Lee v. Aetna Cas. & Sur. Co.,
   178 F.2d 750 (2d Cir. 1949) .............................................................................19

N.L. Indus., Inc. v. Commercial Union Fire Ins. Co.,
   65 F.3d 314 (3d Cir. 1995) ...............................................................................15

Scott v. Salerno,
   297 N.J.Super. 437, 688 A.2d 614 (App. Div. 1997)........................................21

Search EDP, Inc. v. Am. Home Assurance Co.,
   267 N.J.Super. 537, 632 A.2d 286 (App. Div. 1993)........................................21

SL Indus. v. Am. Motorists Ins. Co.,
   248 N.J.Super. 458, 591 A.2d 677 (App. Div. 1991).................................17, 20

State Farm Mut. Auto. Ins. Co. v. Simmons' Estate,
   84 N.J. 28, 417 A.2d 488 (1980) .......................................................................15

Travelers Prop. Cas. Co. of Am. v. Cont'l Ins. Co. of New Jersey,
   Civ. Action No. 10-6320 FLW, 2014 WL 4105487 (D.N.J. Aug. 19, 2014) ..22

Voorhees v. Preferred Mut. Ins. Co.,
   128 N.J. 168, 607 A.2d 1255 (N.J. 1992).........................................................16

W9/PHC Real Estate LP v. Farm Family Cas. Ins. Co.,
    407 N.J.Super. 177, 970 A.2d 382 (App. Div. 2009)........................................23

Wimberly Allison Tong & Goo, Inc. v. Travelers Prop. Cas. Co. of Am.,
    559 F. Supp. 2d 504 (D.N.J. 2008)....................................................................17

**Rules**

Fed. R. Civ. P. 56 ............................................................................................3, 13

Fed. R. Civ. P. 56(a)......................................................................................13, 14

## PRELIMINARY STATEMENT

This insurance coverage action arises out of a tragic, underlying wrongful death action involving the drowning death of a three-year old girl.  Defendant Lynch Investment Group d/b/a Environmental & Technical Services LLC ("Lynch") is a defendant in that underlying wrongful death action captioned, *Scott and Ashley Davidson, et al., v. Sun Communities, Inc., et al.*, Docket No. CUM-L-462-21, that is currently pending in the Superior Court of New Jersey, Cumberland County.  Lynch denies all liability in the underlying action and contends that liability for this incident lies with other parties to the underlying action.  Lynch has tendered its defense to its insurance carriers.

At issue in this action are two insurance policies that Lynch purchased in connection with its business.  Lynch purchased an environmental insurance policy from Defendant Capitol Specialty Insurance Company ("CSIC"), which provides coverage for claims of negligence in the performance of its professional services. It also purchased a businessowners insurance policy from Plaintiff General Security National Insurance Company ("General Security") to provide coverage for liabilities, including damages because of "bodily injury" arising out of its business premises.  Lynch tendered its defense in the underlying action to both carriers; however, the two carriers responded very differently.

General Security does not believe it has a coverage obligation to Lynch for the underlying action because its premises liability coverage expressly excludes coverage for liabilities arising out of professional services and for liabilities that

do not arise out of Lynch's premises.  Nevertheless, General Security is defending Lynch in the underlying action subject to a reservation of rights.

On the other hand, CSIC, the professional liability insurer, initially agreed to defend Lynch in the underlying action because the pleadings in the underlying action clearly *allege* that Lynch was negligent in the performance of its professional services.  Once General Security accepted and agreed to participate in Lynch's defense, CSIC wrongfully withdrew its defense and ceased honoring its obligations to Lynch under the CSIC Policy.  As General Security will demonstrate herein, the allegations in the underlying action potentially trigger coverage under the CSIC Policy issued to Lynch and, under settled New Jersey law, CSIC has a duty to defend Lynch.

The underlying action arises out of a fatal incident that took place on April 3, 2021, allegedly as a result of a hazardous or dangerous condition that was reportedly created or resulted from the negligent operation and/or maintenance of a septic tank located at a campground in Cape May, New Jersey.  As is relevant here, the CSIC Policy provides Environmental Consultants Professional Liability Coverage, which includes a Covered Professional Activities – Specifically Defined endorsement that defines "Covered Professional Activities" to mean those professional services performed by Lynch, or on its behalf, for others for a fee including, in part, Wastewater Management & Treatment Services.  There is no question that the claims asserted against Lynch in the underlying action are potentially covered under the CSIC Policy.  Indeed, CSIC's duty to defend only

ceases when the potentially covered claims are withdrawn or dismissed with prejudice, or when the applicable policy limit has been paid. None of those conditions has been met.

The issue of which insurance company's coverage applies to *indemnify* Lynch's liability, if any, in the underlying action, will be determined at a later time. The only issue before this Court now is whether CSIC, Lynch's professional liability insurer, must share the obligation to *defend* Lynch, or whether it may be permitted to walk away and let General Security pay the costs of defending Lynch. Because there is, at the least, a potential for coverage under the CSIC Policy, New Jersey law holds that CSIC is obligated to defend Lynch in the underlying action.

Based on the foregoing, and pursuant to Fed. R. Civ. P. 56, General Security is entitled to partial summary judgment as to its First Cause of Action and a declaration that CSIC has a duty to defend Lynch in the underlying action pending in the Superior Court of New Jersey.

## STATEMENT OF FACTS[1]

### A.   The Underlying Action

This declaratory judgment action stems from an incident that occurred on April 3, 2021, when a minor child sustained injuries, including death, after allegedly slipping and falling into a septic tank at a campground located at 669

---

[1] In compliance with Local Rule 56.1, General Security relies on its accompanying Statement of Undisputed Material Facts, which are incorporated and referenced herein.

Route 9 in Cape May, New Jersey (the "Camp"). See General Security's Rule 56.1 Statement of Undisputed Material Facts ("SOMF") at ¶ 6. On June 28, 2021, Scott and Ashley Davidson subsequently filed a lawsuit in the Superior Court of New Jersey, Cumberland County against Environmental & Technical Services, LLC ("ETS"), among others (the "Underlying Action"). ( SOMF ¶ 1). On January 18, 2022, a First Amended Complaint was filed in the Underlying Action adding Lynch Investment Group ("LIG") as a defendant and removing the NJDEP as a defendant.[2] ( SOMF ¶ 2).

The Underlying Action alleges that the defendants, including ETS and/or LIG, "owned, leased, possessed, maintained, managed and/or controlled" the Camp, which includes a "septic system open and available for public use." (SOMF ¶¶ 3-4). It is further alleged that the defendants, including ETS and/or LIG, "had a duty to keep and maintain [the Camp] in a reasonably safe condition." (SOMF ¶ 5). Specifically, it is alleged that on April 3, 2021, the minor decedent "slipped, tripped, twisted and fell into the septic tank" at the Camp (the "Incident") that had "a lid/cover that was broken, cracked, damaged, unsecured, improperly secured, open and/or missing the lid/cover, which rendered the premises defective, dangerous, hazardous, irregular and in disrepair." (SOMF ¶ 6).

The Underlying Action also alleges that the Camp was "defective,

---

[2] General Security does not accept the allegations in the underlying complaint, other than for considering the duty to defend.

4

dangerous, hazardous, irregular and in disrepair," that the defendants "had actual and/or constructive notice of the aforementioned condition of the [Camp] for a long time prior to April 3, 2021," and that the minor child "died as a result of the extensive injuries that she sustained in the aforementioned incident." (SOMF ¶¶ 7-8). The defendants, including ETS and/or LIG, are alleged to have "acted and/or failed to act by and through its agents, servants, workmen and/or employees," and are vicariously liable for the "injuries and death sustained by [the minor] plaintiff, "which was caused by the [d]efendants' negligence in . . .creating or permitting the existence of the hazardous condition"; "[f]ailing to adequately inspect the [Camp'"; "[f]ailing to maintain the [Camp] in a reasonably safe condition"; "[f]ailing to repair the . . . unsafe and hazardous condition"; "[f]ailing to warn the plaintiffs of the dangerous condition"; "[f]ailing to use due care under the circumstances"; and "Res Ipsa Loquitor." (SOMF ¶ 9). The Underlying Action further alleges that certain of the defendants, including ETS and/or LIG, have been "cited for multiple violations by [the New Jersey Department of Environmental Protection ("NJDEP")] for unsecured lids/covers that were not bolted down or screwed down, improperly maintaining the septic tank lids/covers in place, having broken and/or cracked lids/covers for the septic tanks and failing to maintain inspection logs." (SOMF ¶ 13).

On July 8, 2022, the plaintiffs voluntarily dismissed LIG from the

Underlying Action without prejudice.  (SOMF ¶ 17).[3]

**B.   The Insurance Policies**

**i.   The General Security Policy**

General Security issued a Businessowners Policy to Lynch, under policy number 3710-500000216 2021 0, in effect for the policy period from January 23, 2021 to January 23, 2022 (the "General Security Policy"), which identifies the insured premises as "822 Washington Avenue, including 825 Jackson Avenue, Woodbine, New Jersey" and states the Business/Operation as "Office."  (SOMF ¶¶ 18-19).  The relevant language of the General Specialty Policy is incorporated herein by reference.  (SOMF ¶¶ 20-25).

Among other provisions, the General Security Policy includes the following Other Insurance clause, in relevant part:

> **10. OTHER INSURANCE**
> **PART II**
> **A.** This insurance is excess insurance over other insurance provided on any basis:
> **1.** That is not subject to the same provision contained in this policy, other than an umbrella/excess liability policy which applies in excess of the limits of this policy.

(SOMF ¶ 24).

**ii.   The CSIC Policy**

CSIC issued an Environmental Policy to Lynch, under policy number EV20160898-06, in effect for the policy period February 25, 2021 through

---

[3] See SOMF ¶ 2 at fn. 2.

February 25, 2022 (the "CSIC Policy"), which includes Environmental Consultants Professional Liability Coverage with limits of $2 million each claim and in the aggregate.  (SOMF ¶¶ 26-27).

The insuring agreement to the Environmental Consultants Professional Liability Coverage part provides as follows:

## I. INSURING AGREEMENT

We shall pay on behalf of the **Insured**, in excess of the Deductible, the **Covered Damages** that the **Insured** becomes legally obligated to pay because of a **Claim** for the negligent acts, errors or omissions of the **Insured** in the performance of **Covered Professional Activities** in the **Coverage Territory**. This coverage applies only if:

**A.** the **Covered Damages** arise out of the performance of **Covered Professional Activities**;

**B.** the negligent acts, errors or omissions in the performance of **Covered Professional Activities** take place on or after the **Retroactive Date** specified in the Declarations and prior to the end of the **Policy Period**

**C.** the **Insured's** obligations to pay **Covered Damages** is determined in a **Suit** on the merits brought and maintained in the **Coverage Territory** or in a settlement we agree to; and

**D.** the **Claim** for **Covered Damages** is first made against you and reported to us by any **Insured**, in writing, during the **Policy Period** or, if applicable, the **Extended Reporting Period**.

(SOMF ¶28).

The following definitions are included in the Environmental Consultants Professional Liability Coverage part:

## II.   DEFINITIONS

\*        \*        \*

B. **Bodily Injury** means physical injury, sickness, or disease sustained by a person, including death resulting from any of these. **Bodily Injury** includes mental anguish or emotional distress.

C. **Claim Related Costs** means all costs and expenses incurred by us or at our request associated with the investigation, handling, defense, settlement or appeal of any **Claim** or **Suit**, including but not limited to attorneys' fees, court costs, arbitration or mediation costs or expense, expert and witness fees, investigative fees, consulting fees, adjustment fees, or any other **Claim** or **Suit** related costs or expenses. . . .

D. **Covered Damages** means:

1. Monetary awards or settlements of compensatory damages for which the **Insured** becomes legally obligated to pay;

2. **Claim Related Costs** . . .

\*        \*        \*

**Loss** does not include:

a. Injunctive or equitable relief;

b. The return of fees or other charges for services rendered;

c. Any criminal fines or penalties; taxes or assessments; multiplied damages, liquidated damages or damages for delay; or

d.  Punitive damages or exemplary damages, unless insurable by law.

*     *     *

(SOMF ¶29).

The CSIC Policy also includes a Covered Professional Activities – Specifically Defined endorsement, which modifies the Environmental Consultants Professional Liability Coverage and provides the following:

### Covered Professional Activities – Specifically Defined

This endorsement modifies insurance provided under the Environmental Policy for the following:
Environmental Consultants Professional Liability Coverage Section

It is hereby understood and agreed that the following changes are incorporated into the Coverage Form(s)/Coverage Section(s) listed above.

**A.** The definition of **Covered Professional Activities** set forth in Section II. DEFINITIONS, Subsection E., is deleted in its entirety and replaced with the following:

**E. Covered Professional Activities** means those professional services performed by you and your business as described in the Schedule below, and which are rendered by you or on your behalf for others for a fee.

**B.** The Specified Professional Services Exclusion set forth in Section III. Of the Coverage Section specified above does not apply to the professional service(s) specified in the Schedule below.

9

| Professional Services Schedule |
|---|
| Wastewater Management & Treatment Services; Environmental Feasibility Studies; Phase 1 Environmental Site Assessments; Exhaust/Stack Air Testing |

\*      \*      \*

(SOMF ¶ 30).

The CSIC Policy provides the following relevant General Terms and Conditions, which apply to all coverage parts:

### I. DEFENSE AND SETTLEMENT

A. **We** have the right and duty to defend an **Insured** against any **Claim** or **Suit** to which this insurance applies. **We** shall have the right to select counsel for the investigation, adjustment and defense of any **Claim** or **Suit**. **We** may at our discretion investigate any incident or matter which may be covered under this Policy. The **Insured** shall not admit liability or settle any **Claim** or **Suit** without our prior written consent.

\*      \*      \*

C. Our right and duty to defend ends at such time when allegations potentially covered by this Policy are either withdrawn or dismissed with prejudice, or when the applicable Limit of Insurance specified in the Declarations has been exhausted by the payment of **Loss**, **Covered Damages**, **Claim Related Costs** or any other amounts payable under this Policy.

\*      \*      \*

### III.    DEFINITIONS

\*      \*      \*

10

D. **Claim** means any written demand, notice, request for defense, request for indemnity, or other legal or equitable proceeding against any **Insured** by a person, entity or asserted class for **Loss** or **Covered Damages**. A **Claim** shall include any **Suit**.

*       *       *

(SOMF ¶ 31).

The CSIC Policy also contains the following Other Insurance provision:

**L.  OTHER INSURANCE**

If other insurance is available to **You** for **Loss** or **Covered Damages** or other amounts **We** cover under this Policy, **Our** obligations are limited as follows:

This Policy is excess over any of the other insurance, whether primary, excess, contingent or on any other basis.

**We** shall:

1.  Have no obligation or duty to provide indemnification for any **Claim** that any other insurer has a duty to defend.

2.  Pay only **Our** share of the amount of the loss, if any, that exceeds the sum of:

    a.  The total amount that all such other insurance would pay in the absence of this insurance; and

    b.  The total of all deductible and self-insured amounts under all such other insurance.

*       *       *

(SOMF ¶ 32).

11

## C. Claim Correspondence

By correspondence dated August 2, 2021, CSIC wrote to Lynch's counsel and acknowledged receipt of the Underlying Action and reserved its rights while requesting additional information from Lynch concerning its work at the Camp and the alleged incident (the "CSIC ROR"). (SOMF ¶ 33). Specifically, CSIC noted that it was unclear whether the Environmental Consultants Professional Liability Coverage part to the CSIC Policy was implicated by the claims in the Underlying Action and reserved the right to disclaim coverage, including pursuant to certain policy exclusions. (SOMF ¶ 34).

By correspondence dated September 7, 2021, CSIC supplemented the CSIC ROR and agreed to defend Lynch in the Underlying Action pursuant to a reservation of rights. (SOMF ¶ 35).

By correspondence dated September 9, 2021, General Security agreed to participate in the defense of Lynch in the Underlying Action with respect to Counts One through Six, pursuant to a reservation of rights to deny coverage to Lynch if it is determined that Lynch's liability does not arise out of the insured premises, "822 Washington Avenue, including 825 Jackson Avenue, Woodbine, New Jersey," including necessary related operations away from those premises or to the extent that Lynch's liability arises out the rendering or failure to render professional services. (SOMF ¶ 36). Because CSIC had already agreed to defend Lynch in the Underlying Action, General Security agreed to pay fifty-percent

(50%) of Lynch's reasonable and necessary defense costs incurred in defending the potentially covered Counts One through Six.  (SOMF ¶ 37).

By correspondence dated October 15, 2021, General Security supplemented its coverage position and informed Lynch that it would continue to pay Lynch's defense costs with respect to all counts in the Underlying Action, subject to a fifty-percent (50%) allocation with CSIC and subject to a reservation of rights to separately allocate costs between covered and uncovered claims. (SOMF ¶ 38).

By correspondence dated November 17, 2021, CSIC supplemented its prior coverage position letters and disclaimed any duty to defend or indemnify Lynch in connection with the Underlying Action and withdrew from the defense.  (SOMF ¶ 39).

Since November 17, 2021, General Security has paid all of Lynch's defense costs in connection with the Underlying Action, which continue to be incurred. (SOMF ¶ 40).

## **LEGAL STANDARD**

Fed. R. Civ. P. 56 provides, in pertinent part:

> A party may move for summary judgment, identifying each claim or defense –or part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

Summary judgment is appropriate as a matter of law where the movant has demonstrated to the Court that there remains "no genuine issue as to any material fact." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986); Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). A genuine issue of material fact exists only if there is evidence which could allow for a reasonable jury to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986); Kaucher, 455 F.3d at 423. The movant bears the "initial responsibility of informing the district court of the basis for its motion" and providing all relevant evidence to "demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. Once the movant has satisfied this burden, the burden of proof shits for the non-moving party who has the burden of demonstrating there exists a genuine issue that would support a jury finding. Anderson, 477 U.S. at 256.

Here, there is no question of fact as to whether CSIC's duty to defend Lynch has been triggered by the allegations asserted in the Underlying Action. The allegations in the First Amended Complaint potentially fall within the Environmental Consultants Professional Liability Coverage grant of the CSIC Policy, which specifically includes wastewater treatment and management services as a covered professional activity, and, at the very least, CSIC's duty to defend Lynch has been implicated. Accordingly, General Security is entitled to partial summary judgment as to its First Cause of Action against CSIC and a declaration that CSIC has a duty to defend Lynch in the Underlying Action.

## LEGAL ARGUMENT

**A.  This Action Has A Real and Significant Relationship With New Jersey Such That New Jersey Law Applies**

A federal court sitting in diversity must apply the choice of law rules of the state in which it is located in order to determine which state's substantive law applies.  Klaxon Co. v. Stentor Electric, 313 U.S. 487, 61 S.Ct. 1020 (1941); Berg Chilling Systems, Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006).  With respect to the interpretation and validity of contracts and insurance policies, New Jersey courts must apply the "most significant relationship" test.  State Farm Mut. Auto. Ins. Co. v. Simmons' Estate, 84 N.J. 28, 34, 417 A.2d 488 (1980).  New Jersey courts have held that the law of the place of contracting should ordinarily apply unless some other state has the "dominant relationship" with the parties and issues.  Id.; see Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass'n Ins. Co., 134 N.J. 96, 629 A.2d 885 (1993); N.L. Indus., Inc. v. Commercial Union Fire Ins. Co., 65 F.3d 314, 319 (3d Cir. 1995) (finding place of contracting controls unless dominant and significant relationship of another state to parties and underlying issue dictates this basic rule should yield).  The place of contracting is the place where the parties executed and delivered the insurance policy.  N.L. Industries, 65 F.3d at 320.

Here, both the General Security and CSIC Policies were issued and delivered to Lynch, a New Jersey corporation, at its principal place of business in Woodbine, New Jersey.  (ECF 1 at ¶9).  While New Jersey courts have found that

the place of contracting determines the applicable law to be applied in contract actions, New Jersey is also the state with the "most significant relationship" to this declaratory judgment action, as the underlying incident took place in New Jersey and the Underlying Action is pending in a New Jersey court. Because no other state has any significant relationship with this coverage action, there is no actual conflict of law and, therefore, New Jersey substantive law must govern this dispute.

**B.    CSIC Has A Duty to Defend Under its Environmental Professional Liability Policy**

Under New Jersey law, an insurer has a duty to defend when a "complaint states a claim constituting a risk insured against." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 168, 174, 607 A.2d 1255, 1259 (N.J. 1992). "Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit." Id. If the complaint is ambiguous as to whether it alleges a covered risk, doubts should be resolved in favor of the insured and, thus, in favor of coverage. Central Nat'l Ins. Co. v. Utica Nat'l Ins. Group, 223 N.J.Super. 467, 557 A.2d 693, 694 (App. Div. 1989); Doto v. Russo, 140 N.J. 544, 659 A.2d 1371, 1376-77 (1995).

An insurer is contractually obligated to provide the insured with a defense against all actions covered by the insurance policy. Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 22, 483 A.2d 402 (1984); see also

Abouzaid v. Mansard Gardens Assoc., LLC, 206 N.J. 67, 78, 23 A.2d 338 (2011).

Consequently, when the complaint raises allegations that fall within a risk covered

by the insurance contract, the insurer has a duty to defend such allegations.  Aetna

Cas. & Sur. Co. v. Ply Gem Indus., Inc., 343 N.J. Super. 430, 452, 778 A.2d 1132

(App. Div. 2001), cert. denied, 170 N.J. 390, 778 A.2d 774 (2001.  An insurer

"may not refuse to defend its insured where the underlying claims at least arguably

fall within the ambit of the policy's coverage."  Wimberly Allison Tong & Goo,

Inc. v. Travelers Prop. Cas. Co. of Am., 559 F. Supp. 2d 504, 510-11 (D.N.J.

2008), aff'd, 352 Fed. Appx. 642 (3d Cir. 2009).  When an insurer has knowledge

of true, unpled facts which, when read together with the allegations in the

complaint, may potentially trigger coverage, the insured has a duty to defend.  SL

Indus. v. Am. Motorists Ins. Co., 248 N.J.Super. 458, 591 A.2d 677 (App. Div.

1991) (referred to as "later-revealed facts doctrine").  Thus, when a complaint

states multiple causes of action, the duty to defend will continue until every

potentially covered claim is eliminated.  Voorhees, 128 N.J. at 174.

Here, the First Amended Complaint alleges that ETS and/or LIG "owned,

leased, possessed, maintained, managed and/or controlled" the Camp and "had a

duty to keep and maintain [the Camp] in a reasonably safe condition," including

the septic tank in question.  (SOMF ¶¶ 3-5).  The First Amended Complaint also

alleges that the incident was caused by a hazardous or dangerous condition at the

Camp; to wit, a "broken, cracked, damaged, unsecured, improperly secured, open

and/or missing the lid/cover."  (SOMF ¶ 6).  In addition, ETS and/or LIG were

17

allegedly negligent in "creating[,] . . . permitting[,] . . . [or] [f]ailing to repair the

. . . unsafe and hazardous condition." (SOMF ¶ 9). Additionally, it is alleged that

ETS and/or LIG "violated state regulations by failing to secure and/or lock down

the lid/cover of the septic tank." (SOMF ¶ 11). Specifically, it is alleged that ETS

and/or LIG have been "cited for multiple violations by [the NJDEP] for unsecured

lids/covers that were not bolted down or screwed down, improperly maintaining

the septic tank lids/covers in place, having broken and/or cracked lids/covers for

the septic tanks and failing to maintain inspection logs". (SOMF ¶ 13). The First

Amended Complaint also alleges that the minor-decedent sustained injuries,

including death, as a result of the defendants' negligence and the defective

condition, and her parents claim to have "suffered severe emotional distress" and

other damages due to witnessing their child's death. (SOMF ¶¶ 8, 10).

With these allegations in mind, turning to the plain terms of the CSIC

Policy, CSIC has agreed that it has the right and duty to defend a claim or suit to

which the insurance applies. (SOMF ¶ 28). Additionally, the CSIC Policy defines

"Bodily Injury" to mean physical injury, sickness, or disease sustained by a

person, including death resulting from any of these, and specifically includes

mental anguish or emotional distress. (SOMF ¶29). With respect to the

Environmental Consultants Professional Liability Coverage part, CSIC has agreed

to pay damages that Lynch becomes legally obligated to pay "because of a Claim

for the negligent acts, errors or omissions of [Lynch] in the performance of

Covered Professional Activities." (SOMF ¶ 28). Pursuant to the Covered

Professional Activities – Specifically Defined endorsement in the CSIC Policy, which modifies the Environmental Consultants Professional Liability Coverage part, "Covered Professional Activities" means those professional services performed by Lynch and Lynch's business as described in the Schedule, and which are rendered by Lynch, or on Lynch's behalf, for others for a fee.  (SOMF ¶ 30).  The Schedule identifies covered Professional Services as: "Wastewater Management & Treatment Services; Environmental Feasibility Studies; Phase 1 Environmental Site Assessments; Exhaust/Stack Air Testing."  (Id.).

When comparing the allegations in the First Amended Complaint alongside the terms of the CSIC Policy, it is undeniable that the First Amended Complaint sets forth claims that are potentially covered under the CSIC Policy, and that CSIC is required to defend Lynch in the Underlying Action.  Indeed, CSIC realized this when it originally agreed to defend.  Nothing changed to alter that conclusion. That is, the Underlying Action seeks to recover damages for the negligent acts, errors or omissions of Lynch in its performance of Wastewater Management & Treatment Services at the Camp.  (SOMF ¶¶ 3-16).  Moreover, the allegations of death and emotional distress constitute "bodily injury" under the CSIC Policy. (McCormack Cert., Exs. B, D).  When a complaint "comprehends an injury which *may* be within the policy," New Jersey courts will find a duty to defend.  Danek v. Hommer, 28 N.J.Super. 68, 78, 100 A.2d 198, 203 (App. Div. 1953), aff'd, 151 N.J. 573, 105 A.2d 677 (N.J. 1954) (emphasis added) (quoting Lee v. Aetna Cas. & Sur. Co., 178 F.2d 750, 753 (2d Cir. 1949)).  Thus, "potentially coverable"

claims require a defense and determining the duty to defend is not necessarily limited to the facts asserted in the pleadings. <u>Abouzaid</u>, 207 N.J. at 86 (recognizing that "poorly-pled claims, that have the potential to result in coverage, remain within the sweep of the duty to defend", and requiring the insurer to defend complaint).

There is simply no question that CSIC's duty to defend has been triggered. The Underlying Action alleges that ETS and/or LIG were negligent in creating or failing to repair the hazardous condition, in failing to adequately inspect the Camp, including the septic tank lid/cover, and in failing to maintain the Camp in a reasonably safe condition, and that ETS and/or LIG violated state regulations related to the septic tank. (SOMF ¶¶ 9, 11, 13). Given the terms and conditions of the CSIC Policy – including that covered professional activities includes wastewater treatment and management services – when compared to the allegations in the First Amended Complaint, it is clear that the Underlying Action sets forth claims that are potentially covered under the CSIC Policy. <u>See</u> <u>SL Indus.</u>, 128 N.J. at 198-99) (recognizing that even facts outside complaint may trigger a duty to defend and insurers cannot "construct a formal fortress of the third party's pleadings and to retreat behind its walls, thereby successfully ignoring true but unpleaded facts within its knowledge that require it, under the insurance policy, to conduct the putative insured's defense.").

As noted, CSIC initially agreed to, and did, defend Lynch in the Underlying Action, under a reservation of rights. (SOMF ¶¶ 33-35). The CSIC Policy

provides that CSIC's right and duty to defend "ends at such time when allegations potentially covered by this Policy are either withdrawn or dismissed with prejudice, or when the applicable Limit of Insurance specified in the Declarations has been exhausted by the payment of Loss, Covered Damages, Claim Related Costs or any other amounts payable under this Policy." (SOMF ¶ 31). None of these conditions has been met, yet once General Security was notified of the claim and agreed to participate in the defense under reservation of rights, CSIC unilaterally withdrew its defense in violation of the CSIC Policy conditions. (SOMF ¶¶ 36, 38-39). CSIC has a duty to defend. General Security's motion for partial summary judgment should be granted.

## C. The "Other Insurance" Clauses Do Not Eliminate CSIC's Duty to Defend

To the extent that CSIC attempts to rely on the "Other Insurance" provision in the CSIC Policy to avoid coverage, such reliance is misplaced. It is well-settled under New Jersey law that "Other Insurance" "means another policy of insurance covering the *same risks*." Scott v. Salerno, 297 N.J.Super. 437, 449, 688 A.2d 614 (App. Div. 1997) (quoting American Nurses Ass'n v. Passaic Gen. Hosp., 192 N.J.Super. 486, 495, 471 A.2d 66 (App. Div. 1984), aff'd in part, rev'd in part, 98 N.J. 93, 484 A.2d 670 (1984) (emphasis added). Here, pursuant to their express terms, the General Security Policy (a general liability policy) and the CSIC Policy (a professional liability policy) are intended to cover different types of risk. See Search EDP, Inc. v. Am. Home Assurance Co., 267 N.J.Super. 537, 632 A.2d 286,

288 (App. Div. 1993).  As noted by the court in <u>Commercial Union Ins. Co. v. Bituminous Cas. Corp.</u>, CIV. No. 87-325, 1989 WL 5818, at *1 (D.N.J. Jan. 25, 1989), when determining priority of coverage, despite the existence of the "other insurance" clauses, the court's first inquiry must be to discern whether both polices cover the same property and interest.  (McCormack Cert., Ex. J).  If the policies are found to be concurrent, the loss must be apportioned between the two carriers.  <u>Id</u>.  This is because when both carriers are primary, "each carrier owes a contractual duty to its own insured to faithfully fulfill its obligations.  Each undertakes to represent its insured and negotiate settlements." <u>Travelers Prop. Cas. Co. of Am. v. Cont'l Ins. Co. of New Jersey</u>, Civ. Action No. 10-6320 FLW, 2014 WL 4105487, at *6 (D.N.J. Aug. 19, 2014) (McCormack Cert., Ex. K).  The policies at issue here do not insure the same risk and there is no reason to resort to the "Other Insurance" provisions.  Under New Jersey law, if both policies are co-primary, no duty exists between the two insurance carriers as each has a primary obligation to defend.  <u>See</u> <u>CNA Ins. Co. v. Selective Ins. Co.</u>, 354 N.J.Super. 369, 377, 807 A.2d 247, 252 (App. Div. 2002); <u>General Accident Ins. Co. v. New York Marine & Gen. Ins. Co. t/a Mutual Marine Office, Inc.</u>, 320 N.J.Super. 546, 556, 727 A.2d 1050 (App. Div. 1999).

Even to the extent it  were determined that the General Security and CSIC Policies provide coverage for the same risk (which is disputed), General Security and CSIC would nonetheless both share in Lynch's defense because both policies contain excess "Other Insurance" clauses.  In New Jersey, where both policies

contain excess "Other Insurance" clauses, the provisions are disregarded as "mutually repugnant" and each insurer is assigned a proportionate share of defense costs.   W9/PHC Real Estate LP v. Farm Family Cas. Ins. Co., 407 N.J.Super. 177, 199, 970 A.2d 382 (App. Div. 2009).

Based on the allegations in the Underlying Action and the plain terms of the CSIC Policy, CSIC has a contractual obligation to defend Lynch in the Underlying Action.  Accordingly, General Security is entitled to partial summary judgment with respect to CSIC's duty to defend.

## CONCLUSION

For the foregoing reasons, General Security National Insurance Company respectfully requests that the Court grant this Motion for Partial Summary Judgment as to General Security's First Cause of Action and declare that defendant Capitol Specialty Insurance Corporation must defend Lynch Investment Group d/b/a Environmental & Technical Services LLC in the Underlying Action.

Respectfully submitted,

**KENNEDYS CMK LLP**

Dated: July 19, 2022

  /s/ Tara E. McCormack_____
Christopher R. Carroll, Esq.
Tara E. McCormack, Esq.
Joanna L. Young, Esq (*pro hac vice*)
120 Mountain View Boulevard
P.O. Box 650
Basking Ridge, New Jersey 07920
Tel.: 908.848.6300
Fax: 908.647.8390

Christopher.Carroll@kennedyslaw.com
Tara.McCormack@kennedyslaw.com
Joanna.Young@kennedyslaw.com
*Attorneys for Plaintiff*
*General Security National Insurance Company*

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that a copy of the foregoing Memorandum of Law in Support of Plaintiff General Security National Insurance Company's Motion for Partial Summary Judgment was served upon all counsel of record by electronic case filing (ECF) on July 19, 2022.


Dated:  July 19, 2022                     ___/s/ Tara E. McCormack_____
                                          Tara E. McCormack